UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JAMIE VAUGHN** | * | CASE NO.: |
| | * | |
| **VERSUS** | * | |
| | * | DISTRICT JUDGE: |
| **WELLPATH, LLC** | * | |
| | * | |
| | * | MAGISTRATE: |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*\*\*

## COMPLAINT

The Complaint of Jamie Vaughn, a person of the full age of majority and a resident of the Eastern District of Louisiana, respectfully represents:

1.

This is a claim authorized and instituted pursuant to the Americans with Disabilities Act (hereinafter referred to as the "ADA"), which incorporates by reference Title VII of the Civil Rights Act of 1964 (hereinafter referred to as "Title VII), the Civil Rights Act of 1991, and the Family and Medical Leave Act of 1993 (hereinafter referred to as the "FMLA").

2.

Named Defendant is Wellpath, LLC (formerly Correct Care Solutions), a foreign limited liability company of over 14,000 employees with its principal place of business in Nashville, Tennessee, doing business in the State of Louisiana and in this judicial district.

3.

Jamie Vaughn (hereinafter referred to as "Vaughn") is a certified medical assistant by profession. On September 8, 2015, Vaughn accepted a full-time certified medical assistant

position with Correct Care Solutions. According to its website and Louisiana Secretary of State documents, Correct Care Solutions is now Wellpath, LLC (hereinafter referred to as "Wellpath").

4.

Vaughn accepted a certified medical assistant position with Wellpath in September of 2015. In 2016, Vaughn became pregnant. As a result of a previous back injury, her pregnancy exacerbated her condition. She qualified for intermittent FMLA from October 10, 2016 through January 10, 2017. However, she did not take the intermittent FMLA because she did not know when the flare ups would occur. Vaughn and her employer agreed that Vaughn would call in as soon as possible regarding flare ups.

5.

Vaughn had her child on January 25, 2017. Her first day of approved maternity/FMLA leave was January 16, 2017. She was set to return to work on March 20, 2017. She would have returned to work on March 13, 2017 without restrictions; however, Wellpath required that she take 8 full weeks of leave because she underwent a cesarean section

6.

Prior to Vaughn's return, on or about March 8, 2017, her supervisor Alexes Walker (hereinafter referred to as "Walker") texted Vaughn regarding her return date. Vaughn informed Walker that per human resources, Vaughn could not return until March 20, 2017. Walker responded, "WTF? HR is not your boss, I am."

7.

Vaughn returned to work on March 20, 2017. She remained in her previously assigned light-duty administrative position with Walker. Upon seeing Vaughn, Walker snapped, "Why

did you come back to work? You did not call or tell me that you were coming back." Vaughn reminded Walker of their text message exchange. From that point on, Walker treated Vaughn with hostility and contempt.

8.

Walker assigned other employees to "watch" Vaughn. Walker moved Vaughn's desk directly in front of her own so that she could "watch" Vaughn. Vaughn had to tell Walker when she went to the restroom, to get water, to eat lunch, or anything that required Vaughn to move from her desk. Other employees referred to Walker as Vaughn's "probation officer."

9.

In addition to Walker's hostility and contempt following Vaughn's return to work, Vaughn became stricken with postpartum depression and debilitating post-traumatic stress disorder (PTSD). The postpartum depression followed the birth of her child in January. The PTSD stemmed from her brother's murder on December 24, 2014.

10.

Vaughn's brother, James Vaughn, was murdered at Foot Locker in Oakwood Mall on Christmas Eve of 2014. James Vaughn's murderer's trial ended on March 23, 2017. Vaughn was actively being treated by a medical professional for the postpartum depression and PTSD.

11.

Vaughn made several attempts to discuss her disabling conditions with Walker; however, Walker was neither receptive to discussion nor accommodating to the situation. In fact, Walker specifically told Vaughn, "That's your problem, not mine." Thus, Vaughn reported Walker's harassment and hostility to human resources.

12.

After successfully returning to work for one month, Vaughn sought leave of absence in order to treat her persisting PTSD and postpartum depression.  Wellcare approved leave from April 14, 2017 through May 5, 2017, with a return to work date of May 8, 2017.  During this time of FMLA leave, Vaughn also received short term disability benefits.

13.

Due to persisting disability, Vaughn's treating physician determined that she required extended leave until June 5, 2017.  Wellcare was provided documentation regarding Vaughn's need for extended leave due to her disabling conditions.

14.

Despite being on FMLA and short term disability, Wellcare terminated Vaughn effective May 5, 2017 on the grounds of her "inability to return from a Leave of Absence."  Vaughn, however, was able to return to work on June 5, 2017.

15.

Vaughn filed an Equal Employment Opportunity Commission (hereinafter referred to as "EEOC") Charge of Discrimination on October 23, 2017.  Despite requesting Vaughn's employment file, Wellpath refused to produce it, intentionally trying to prevent Vaughn from adequately setting forth her claim.  Nevertheless, the EEOC issued a Proposed Conciliation Agreement in October of 2018.  Wellpath refused conciliation.  Thereafter, on December 12, 2018, the EEOC issued a Notice of Conciliation Failure, Dismissal and Notice of Right to Sue.

16.

At all material times, Vaughn was an employee of Wellpath within the meaning of the Americans with Disabilities Act, and a qualified individual with a disability who was able to perform the essential functions of her position with or without a reasonable accommodation.

17.

At all material times, Vaughn was an employee and an eligible employee within the meaning of the FMLA.

18.

At all material times, Wellpath was an employer as defined by the Americans with Disabilities Act.

19.

At all times material, Wellpath was a covered entity under the Americans with Disabilities Act. Wellpath is also an employer within the meaning of the FMLA, in that Wellpath employs and has employed 50 or more employees for each working day each of 20 or more calendar workweeks in the current or preceding calendar year.

20.

Wellpath discriminated against Vaughn, a person with a disability, actual, perceived, or recorded, on account of said disability, in violation of the ADA. Wellpath wrongfully terminated Vaughn while she was on FMLA leave and short term disability for a disabling condition resulting from postpartum depression and PTSD.

21.

Wellpath wrongfully terminated Vaughn in retaliation for lodging a complaint for harassment against her supervisor, Alexes Walker.

22.

Wellpath violated the FMLA with respect to Vaugh in the following respects: 1) by performing practices and acts which constituted a systematic and ongoing pattern of interfering with, or restraining or denying Vaughn's exercise of or her attempts to exercise her rights under the FMLA; and 2) by instituting practices and taking actions which constitute an ongoing pattern of discriminating or otherwise retaliating against Vaughn in violation of the FMLA.

23.

Vaughn has satisfied all conditions precedent to the filing of this action.

24.

The unlawful employment practices complained of herein were intentional.

25.

As a result of Wellpath's discrimination and wrongful termination, Vaughn suffered, in the following non-exclusive particulars, loss of wages, loss of benefits, loss of her residence, economic loss, physical pain and suffering due to exacerbated depression and anxiety, and past, present and future mental anguish.  Thus, Wellpath is liable to Vaughn for general and specific damages.

26.

As a result of Wellpath's discrimination and wrongful termination, Vaughn is entitled to punitive damages as provided by 42 USCA 1981a.

27.

As a result of Wellpath's discrimination and wrongful termination, Vaughn is entitled to recover attorney fees, including litigation expenses and costs as provided by 42 USCA 12205, 42 USCA 1981a and 29 USCA 2617.

28.

As a result of Wellpath's discrimination and wrongful termination, Vaughn is entitled to recover liquidated damages as provided by 29 USCA 2617.

**WHEREFORE**, Jamie Vaughn prays that Defendant, Wellpath, LLC, be duly cited to appear and answer this Complaint; that it be served with a copy of same; that after due proceedings be had, there be judgment in Vaughn's favor and against Defendant in an amount sufficient to compensate her for the damages set forth above, for judicial interest from the date of judicial, demand, for attorney fees and costs, including interest on fees and costs until such fees and costs are paid, and for all other general and equitable relief that may be provided by law.

Respectfully submitted,

/s/  Jennifer S. Martinez
JENNIFER N. WILLIS (#14877)
jenniferw@willisbuckley.com
JENNIFER S. MARTINEZ (#29624)
jenniferm@willisbuckley.com
WILLIS & BUCKLEY, APC
3723 Canal Street
New Orleans, Louisiana 70119
Telephone: (504) 488-6301
Facsimile: (504) 488-6302
*Attorneys for Plaintiff, Jamie Vaughn*

**PLEASE SERVE:**

**WELLPATH, LLC**
Through its Registered Agent for Service
Corporate Creations Network, Inc.
1070 –B West Causeway Approach
Mandeville, Louisiana 70471